UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ACUITAS CAPITAL, LLC,

              Plaintiff,

    -against-

IDEANOMICS, INC.,

              Defendant.

23 Civ. 02124 (PAE)

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF ACUITAS CAPITAL, LLC'S APPLICATION
TO MODIFY THE ORDER GRANTING PRELIMINARY INJUNCTION**

MᴄDᴇʀᴍᴏᴛᴛ Wɪʟʟ & Eᴍᴇʀʏ LLP

Andrew B. Kratenstein
Lisa A. Gerson
One Vanderbilt Avenue
New York, New York 10017
Tel: (212) 547-5400

*Attorneys for Plaintiff Acuitas Capital, LLC*

## PRELIMINARY STATEMENT

Plaintiff Acuitas Capital, LLC ("Acuitas Capital") respectfully moves to modify the Court's Order Granting Preliminary Injunction, dated March 31, 2023 (ECF No. 41) (the "Preliminary Injunction Order"), by extending the injunction against defendant Ideanomics, Inc. ("Ideanomics") violation of the lock-up provision of the parties' Securities Purchase Agreement (the "SPA")[1] by 48 days (*i.e.*, until after June 19, 2023) to account for Ideanomics' – as the Court aptly put it at the hearing held on March 31, 2023 – "between the eyes" breach of the SPA's lock-up provision on or around March 14, 2023.

In addition, Acuitas Capital has learned that, the day before the preliminary injunction hearing on March 31, 2023, Acuitas Capital breached the lock-up again.  Specifically, on March 30, 2023, Ideanomics entered into a new convertible debenture with YA II PN ("YA") in the principal amount of $1,400,000 (the "Convertible Debenture") in exchange for a payment from YA to Ideanomics for $1,000,000 and forgiveness of $400,000 on a note.  Upon a default of the Convertible Debenture – which has occurred – YA can convert the debenture into shares of Ideanomics common stock.  Thus, the Preliminary Injunction Order should also be modified to account for this new breach, by making clear that the Preliminary Injunction Order applies to this newly-disclosed transaction and requiring Ideanomics to escrow the funds that Ideanomics received from it.

---

[1] Unless otherwise indicated, all capitalized terms herein have the same meaning as in the SPA.

## BACKGROUND

As the Court is already familiar with the background, only the facts relevant to this application are summarized below.

On November 14, 2022, Acuitas Capital and Ideanomics entered into the SPA. (ECF No. 8-1.)  Pursuant to the SPA, Acuitas Capital invested $20 million in Ideanomics in exchange for Series B Convertible Preferred Stock in Ideanomics and Warrants.  (*Id.*)

So that the stock issued to Acuitas Capital maintained its value and would not be diluted by further securities issuances within the 90 days after Acuitas Capital could sell the common stock that it received from Ideanomics pursuant to any Preferred Stock conversions or Warrant exercises, Ideanomics agreed to a "lock-up."  Specifically, Ideanomics agreed that, without the prior written consent of Acuitas Capital, Ideanomics would not, for a period of ninety (90) days beginning upon the later of November 14, 2022, or the effective date of the last registration statement filed for Ideanomics common stock, offer, sell, or otherwise transfer any shares of capital stock of Ideanomics or any securities convertible into or exercisable or exchangeable for shares of capital stock of Ideanomics, provided, however, that if Ideanomics' common stock was trading at least 20% higher than the conversion price of the Preferred Stock, Ideanomics shall have the right to utilize its Standby Equity Purchase Agreement ("SEPA"), agreed between Ideanomics and YA in August of 2022 to sell up to 3% of the outstanding volume of Ideanomics' common stock.  (*Id.* § 4(j).)

The "last registration statement" was filed in December 2022, and declared effective on February 1, 2023.  (ECF No. 8 ¶ 19, Ex. B.)  Thus, the lock-up period expires 90 days thereafter, or on May 2, 2023.  (*Id.*)

On March 3 and 6, 2023, respectively, Acuitas Capital sent a Conversion and Exercise

Notice (the "March Notices") to Ideanomics.  (ECF Nos. 8-5, 8-6.)  On March 7, 2023, Ideanomics refused to honor the March Notices and unilaterally declared the SPA "null and void." (ECF No. 8-7.)

Acuitas Capital filed this lawsuit and moved for a preliminary injunction on March 13, 2023.  (ECF Nos. 1-9.)  The next day, March 14, 2023 – and 48 days before the lock-up period was set to expire on May 2, 2023 – Ideanomics sent YA an advance notice to sell 35,000,000 shares of common stock to YA for approximately $0.0995 per share, or $3,482,500 in total consideration.  (ECF No. 32 ¶ 12, Ex. B; ECF No. 34-1.)  By letter dated March 16, 2023, YA's counsel confirmed to Acuitas Capital's counsel that YA had honored or intended to honor the advance notice.  (ECF No. 31-3.)  At the preliminary injunction hearing held on March 31, 2023, counsel for Ideanomics did not deny that Ideanomics sent the advance notice to YA, sold YA the stock, and received the proceeds.

The Court ruled that Acuitas Capital had demonstrated a substantial likelihood that Ideanomics had breached the SPA by failing to honor the March Notices and violating the lock-up provision.  The Court entered the Preliminary Injunction Order (ECF No. 41), and enjoined further violations of the lock-up until after May 2, 2023 (the original expiration date of the lock-up) because Acuitas Capital had sought an extended lock-up period in its reply brief (as the lock-up had not been violated until after Acuitas Capital filed its Complaint and Order to Show Cause seeking a preliminary injunction).  (ECF No. 41 ¶ 4.)  The Court also required Ideanomics to escrow the proceeds of its illicit stock sales to YA.  (*Id.* ¶ 6.)

The same day as the preliminary injunction hearing, March 31, 2023, Ideanomics filed a Form 8-K disclosing yet another breach of the lock-up. (Kratenstein Modification Decl. Ex. A.)[2] Specifically, Ideanomics disclosed (among other things) that, on March 30, 2023, Ideanomics entered into the First Amendment to the Secured Debenture Purchase Agreement (the "Amended SDPA") with YA, which amended the original Secured Convertible Debenture Agreement (the "Original SDPA"), and simultaneously consummated the sale to YA of a Secured Convertible Debenture (the "Convertible Debenture") in a private placement pursuant to the SDPA. (*Id.*) Upon the terms and subject to the conditions contained in the Amended SDPA, Ideanomics promised to YA $1,400,000 (the "Principal"), when due, whether upon the maturity date, acceleration, redemption, or otherwise and to pay interest on any outstanding Principal at an interest rate of eight percent (8%), provided that such interest rate shall be increased to 18% upon an event of default. Importantly, as disclosed in the 8-K, the Amended SDPA and Convertible Debenture shall be convertible into shares of Ideanomics common stock. (*Id.*) Specifically, upon an event of default, YA shall be entitled to convert any portion of the outstanding and unpaid conversion amount into fully paid nonassesable shares of common stock at the conversion rate. (*Id.*) In exchange for the Convertible Debenture, YA agreed to pay Ideanomics $1 million and set-off $400,000 against a Promissory Note that Ideanomics had issued to YA on or about March 29, 2023. (*Id.*)

Section 2(a)(3) of the Convertible Debenture defines an "Event of Default" as including any breach of "any other . . . instrument", and Section 3(a) permits YA to convert upon any Event of Default. (Kratenstein Modification Decl. Ex. A at Ex. 10-2 §§ 2(a)(3), 3(a).) The Preferred

---

[2] "Kratenstein Modification Decl." refers to the Declaration of Andrew B. Kratenstein, dated April 3, 2023.

5

Stock and Warrants issued to Acuitas Capital are both plainly financial instruments,[3] which Ideanomics breached (as this Court all but found at the hearing on March 31, 2023). Thus, YA at least arguably has the right to convert the Debenture into Common Stock now.

## ARGUMENT

As discussed above, the Preliminary Injunction Order should be modified in at least two ways.

*First*, in addition to Ideanomics' refusal to deliver common stock to Acuitas Capital pursuant to the March Notices, Acuitas Capital has also been denied the full benefit of lock-up (*i.e.*, a full 90-day lock-up period). In other circumstances in which restrictive covenants have been breached, courts have extended them. *See, e.g.*, *New York Real Est. Inst., Inc. v. Edelman*, 42 A.D.3d 321, 322 (1st Dep't 2007) (extending time period of restrictive covenant after unilateral breach); *J.H. Goldberg Co. v. Stern*, 53 A.D.2d 246, 252 (4th Dep't 1976) (holding that defendant "should not profit from his misdeed in violating the [restrictive covenant]" and thus "the interests of justice demand that the two-week period in which [he] was in violation of the covenant be added" to the original agreed-upon one-year time period.).

This Court should do the same here and make clear that the extended lock-up also applied to the Amended SDPA and Convertible Debenture. Indeed, extending the lock-up would not even

---

[3] The Tax Code defines a 'financial instrument' as follows: "(C) Financial instrument.--The term "financial instrument" includes stocks and other equity interests, evidences of indebtedness, options, forward or futures contracts, notional principal contracts, and derivatives." 26 U.S.C.A. § 731(c)(2)(C). *See also In re Bennett Funding Grp., Inc.*, 232 B.R. 565, 568 (Bankr. N.D.N.Y. 1999) ("A warrant is a financial instrument that gives the holder the right, but not the obligation, to purchase a specified amount of the issuer's common stock at a specified price (the 'strike price') within a specified time period."); *United States v. Gardell*, No. S400CR.632(WHP), 2001 WL 1135948, at *11 (S.D.N.Y. Sept. 25, 2001) ("In contrast, here, the pension fund fraud involves a common scheme of all seven defendants to defraud union pension funds through investment in two distinct financial instruments, a preferred stock offering and interests in a hedge fund.").

restore the parties to the status quo because shares have already been issued to YA pursuant to the first lock-up breach, thus diluting Acuitas Capital's interest in Ideanomics.

*Second*, this Court already ordered that YA escrow the proceeds of any sales to YA of Ideanomics common stock received on or after March 7, 2023.  The Court should make clear that portion of the Preliminary Injunction Order also applies to the funds received by Ideanomics pursuant to the Amended SDPA or Convertible Debenture.

## CONCLUSION

For the foregoing reasons and those in Acuitas Capital's opening and reply papers, the Court should modify the Preliminary Injunction Order (ECF No. 41) so that it now reads in paragraphs 4 and 6 as follows:

4.       Through and including June 19, 2023, Ideanomics shall not, without the prior written consent of Acuitas Capital, offer, pledge, sell, contract to sell, sell any option contract to purchase, purchase any option or contract to sell, grant any option, right or warrant to purchase, lend, or otherwise transfer or dispose of, directly or indirectly, any shares of capital stock of Ideanomics or any securities convertible into or exercisable or exchangeable for shares of capital stock of Ideanomics (including, without limitation, pursuant to the Standby Equity Purchase Agreement agreed between Ideanomics and YA II PN ("YA") in August of 2022 (the "SEPA"), the First Amendment to the Secured Debenture Purchase Agreement ("Amended SDPA") between Ideanomics and YA, or the Secured Convertible Debenture ("Convertible Debenture") between Ideanomics and YA, both dated March 30, 2023), provided, however, that if the trading price of Ideanomics Common Stock is at least 20% greater than the conversion price of the Preferred Stock, Ideanomics shall have the right to utilize the SEPA to sell up to 3% of the outstanding volume of Ideanomics' Common Stock;

. . .

6.       Pending further briefing as to the legality of such sale(s), and an ensuing court order, Ideanomics shall hold in escrow, and not dissipate, the proceeds of any sale(s) of any offer, pledge, sale, contract to sell, sale of any option or contract to purchase, purchase of any option or contract to sell, granting of any option, right or warrant to purchase, lending, or otherwise transfer or disposal of, directly or indirectly, any shares of capital stock of Ideanomics or any securities convertible into or exercisable or exchangeable for shares of capital stock of Ideanomics, that was entered into on or after February 1, 2023, including, without limitation, any

funds received from YA pursuant to the SEPA, Amended SDPA, or Convertible Debenture.

A proposed order is submitted herewith.


Dated: New York, New York         MCDERMOTT WILL & EMERY LLP
       April 3, 2023

                                             /s/ *Andrew B. Kratenstein*
                                           Andrew B. Kratenstein
                                           Lisa A. Gerson
                                           One Vanderbilt Avenue
                                           New York, New York 10017
                                           (212) 547-5400

                                           *Attorneys for Plaintiff Acuitas Capital, LLC*

8