# LAW OFFICES OF BARRY M. BORDETSKY

| | |
|---|---|
| **570 Lexington Avenue, 24th Floor** | **22 North Park Place, 2nd Floor** |
| **New York, New York 10022** | **Morristown, New Jersey 07960** |
| **Tel.: (212) 688-0008** | **Tel.: (973) 998-6596** |
| **Fax: (212) 319-7605** | **Fax: (973) 937-7850** |
| | ***Please respond to NJ address** |

**EMAIL: barry@bordetskylaw.com**

Admitted in NY/NJ                                                                                      *Of Counsel, Littman Krooks LLP

June 12, 2023

**By ECF**
Hon. Paul A. Engelmayer
United States District Court
  For the Southern District of New York
40 Foley Square, Room 1305
New York, New York 10007

Re:   Acuitas Capital, LLC v. Ideanomics, Inc. (23-cv-2124)

Dear Judge Engelmayer:

The Court ordered defendant Ideanomics, Inc. ("Ideanomics") to provide, by letter brief, Ideanomics' position on the implications of a finding by the Court that plaintiff is an unregistered dealer. Specifically, the Court requested Ideanomics' position regarding the effect of such finding upon the disposition of the case and the proper remedies to be ordered.[1]

Relevant to this analysis are the following facts. Pursuant to a stock purchase agreement ("SPA") Plaintiff purchased twenty million shares of preferred stock and twenty million warrants from Ideanomics for twenty million dollars. *See* Dec. of Terren Peizer, ¶20 (Dkt. No. 8). Each warrant was exchangeable for more than one share of Ideanomics' stock. Id. ¶15. Prior to the lawsuit Plaintiff converted ten million dollars of preferred stock and received 49,019,608 shares of Ideanomics' common stock in return. Id. ¶¶20-23. This stock was then sold; discovery will yield the exact value received, but from Plaintiff's court submissions it appears to be approximately $7.5 million dollars. *See Reply Dec. of Michael Wachs*, ¶5 (Dkt. No. 32). Subsequent to the lawsuit, and with knowledge of the claim of illegality associated with the contract and associated transactions, Plaintiff effectuated warrant and preferred share conversions, and received 433,997,058 common shares of Ideanomics stock, and thereafter sold those shares for $18,256,200.39 in sale proceeds (held in escrow). *See* Joint Letter, p.1 (Dkt. No. 63). Plaintiff currently holds six million dollars' worth of convertible preferred stock. Ideanomics, in turn, deposited $313,000 in escrow based upon a preliminary finding that such funds were received as an ill-gotten gain when Ideanomics effectuated a transaction with a third party in (Plaintiff alleged) violation of the terms of the SPA.

The Court has requested a two-part analysis. First, using the assumption Plaintiff violated Section 15(a) of the Exchange Act, in accordance with Section 29(b) of the Exchange Act, what is the effect on the disposition of the case? The quick answer: the case should be dismissed with prejudice. *See Schatzki v. Weiser Cap. Mgmt., LLC*, 2016 WL 6662264, at *6 (S.D.N.Y. Nov. 9, 2016) *citing Couldock & Bohan, Inc. v. Societe Generale Sec. Corp.*, 93 F. Supp. 2d 220, 232-233 (D. Conn. 2000)(granting summary

---

[1] Based upon the directive of the Court, the remedies set forth herein are based upon a finding not only of a violation of Section 15(a) of the Exchange Act, but also the application the sanction afforded by Section 29(b) of the Exchange Act.

judgment for rescission where pursuant to the Exchange Act the underlying agreement was found to be void and unenforceable) *quoting* 2 Restatement (Second) of Contracts § 181 ("If a party is prohibited from doing an act because of his failure to comply with a licensing, registration or similar requirement, a promise in consideration of his doing that act or of his promise to do it is unenforceable on grounds of public policy if (a) the requirement has a regulatory purpose, and (b) the interest in the enforcement of the promise is clearly outweighed by the public policy behind the requirement."); *accord Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 77-86, 102 S. Ct. 851, 859–60, 70 L. Ed. 2d 833 (1982) (a court may not enforce a contract provision which violates federal law)[2]

Courts throughout the country, including those in this Circuit, have held where an investor/lender to a contract was unregistered in contravention of the Exchange Act, the contract is not enforceable. *See Lawrence v. Richman Group of Connecticut, LLC*, 407 F.Supp.2d 385, 391 (D. Ct. 2005) (Accordingly, the contract plaintiff alleges with TRGCT violates 15 U.S.C. 78o(a)(1), is thus void pursuant to 15 U.S.C. 78cc(b), and plaintiff's breach of contract claim…is dismissed"); *Regional Properties, Inc. v. Financial & Real Estate Consulting Co.,* 678 F.2d 552, 564 (5th Cir.1982) (Court rescinded agreements selling partnership interests because they were procured by an unregistered broker in violation of the Exchange Act and could not be performed lawfully); *Eastside Church of Christ v. National Plan, Inc.,* 391 F.2d 357 (5th Cir.), *cert. denied,* 393 U.S.913, 89 S.Ct. 234, 21 L.Ed.2d 198 (1968) (contract void pursuant to §29(b) because purchaser was unregistered broker-dealer); S*undstrand Corp. v. Sun Chem. Corp*., 553 F.2d 1033, 1051 (7th Cir.1977) (affirming dismissal of counterclaim for damages under agreement that violated the Securities Exchange Act and Rule 10b–5 as "void as regards the rights of [the violator] under Section 29(b) of the Act").

The First Circuit's decision in *EdgePoint Cap. Holdings, LLC v. Apothecare Pharmacy, LLC*, specifically the penultimate holding in the case, is on all fours.  6 F.4th 50, 63 (1st Cir. 2021)*EdgePoint* speaks specifically to the Court's question regarding how it could fashion a remedy where a party sues for a breach of contract, including the related claim for indemnification of legal fees. Id at 63.  In *EdgePoint,* after finding the plaintiff violated Section 15(a) of the Exchange Act, the First Circuit reversed the district court and held the underlying agreement voidable and unenforceable. ("Because we conclude that the Sell-Side Agreement is voidable, Apothecare is not required to pay either the Success Fee or EPCH's litigation expenses as outlined in the indemnification provision"). Id.

According to well established authority emanating from federal courts at the district and appellate levels throughout the country, dismissal of the complaint with prejudice is the first step in fashioning a remedy in this case pursuant to the Exchange Act.

The Court thereafter must turn to the funds being held by the parties in escrow accounts. We start by addressing the funds held by Ideanomics.  With the assumed finding that Plaintiff violated the Exchange Act, the SPA is not enforceable and the complaint dismissed, it is axiomatic that Ideanomics could not have breached the SPA.  Thus, the $313,000 should be released to Ideanomics.

---

[2] The federal position aligns with longstanding New York's law: "It is the settled law of this State (and probably every other State) that a party to an illegal contract cannot ask a court of law to help him carry out his illegal object, nor can such a person plead or prove in any case in which he, as a basis for his claim, must show forth his illegal purpose."  *McConnell v. Commonwealth Pictures Corp*., 7 N.Y.2d 465 (1960) *quoting Stone v. Freeman*, 298 N.Y. 268, 271, 82 N.E.2d 571, 572 (1948)

The analysis as to the funds held in escrow by Plaintiff provides the Court with substantial latitude as to how to fashion its remedy. After filing suit, Plaintiff effectuated conversions resulting in the receipt of $18,261,200.39 of proceeds. This amount is being held in escrow. In the course of the June 7, 2023, preliminary conference the Court inquired whether any remedy it fashioned required the already completed conversions to be "unscrambled". The answer is no. *See Mills v Electric Auto-Lite,* 396 US 375, 386 90 S. Ct. 616, 24 L. Ed. 2d 593 (1970) ("nothing in the statutory policy "requires the court to unscramble a corporate transaction merely because a violation occurred.").

Ideanomics acknowledges the remedy that is to be fashioned falls to the sound discretion of the Court. *See Mills,* 396 US at 386. When invoking 29(b) equity considerations the Supreme Court commented:

> Possible forms of relief will include setting aside the merger or granting other equitable relief, but ... nothing in the statutory policy "requires the court to unscramble a corporate transaction merely because a violation occurred." In selecting a remedy the lower courts should exercise "'the sound discretion which guides the determinations of courts of equity'" keeping in mind the role of equity as "the instrument for nice adjustment and reconciliation between the public interest and private needs as well as between competing private claims."

Id. (citations omitted).

Ideanomics thus proposes remedies that have been fashioned by other courts where there was a finding, as assumed for purposes of this letter brief, a violation of Section 15(a) of the Exchange Act.

Plaintiff cannot reap the benefit of the results in effectuating the trades - - particularly when it was put on notice that the same were in contravention to the Exchange Act. *EdgePoint*, 6 F.4th at 63 ("The policies described above impose the risk of the transaction on EdgePoint, not Apothecare.") Ideanomics submits a remedy the law permits would be to allow the amount of the escrow beyond the twenty million originally paid by Acuitas (or approximately six million dollars, assuming $7.5 million in pre-lawsuit proceeds and $18.5 million post) to be released to Ideanomics, with Plaintiff able to retain the original twenty million as though the contract had never been effectuated.

The Fifth Circuit decision in *Regional Properties* supports this form of a remedy. 678 F.2d 552 There, a disbarred lawyer sold limited partnership interests in real estate holdings to investors despite the fact that he had not registered as a securities broker/dealer as required by §15(a)(1) of the 1934 Act. The general partners brought suit when they discovered that the disbarred lawyer was not a registered broker/dealer, but only after the defendant had been paid a substantial amount and had rights to several hundred thousand dollars in an escrow account. In fashioning a remedy under §29(b), the district court allowed recovery of the escrowed funds but denied recovery of fees already paid to the defendant, reasoning that he had done the work and should be compensated. Id. at 555-57 The Fifth Circuit approved this result. It held that:

> The fact that public policy embodied in the securities laws prohibits enforcement of the contract is not alone a sufficient reason to allow even an innocent party to retain an unjust enrichment at the expense of a culpable one ... When the services contracted for have been performed by an unlicensed person, courts have "nearly always" denied restitution of payments made for such services. Because he has done the work promised, the unlicensed person who received the fee is not unjustly enriched. The person who paid his fee has received actual services. The law, therefore, leaves the parties where it found them."'

Id at 564 (citations omitted).

*Mills* also supports the idea that it would be within the Court's discretion to allow Plaintiff to receive an amount equal to its investment, twenty million dollars (accounting for the approximately $7.5 million it received in pre-lawsuit sales of Ideanomics' stock), and that the remainder of the funds be released to Ideanomics. *Regional Properties,* 678 F.2d at 565 ("as between Regional [the plaintiff] and Financial [the defendant], this loss ... should fall on the violator of the Act.").

Ideanomics does note herein authority allowing this Court to provide the full amount of the escrow funds to be released in full to Ideanomics. The most recent case on point found by Ideanomics supporting this remedy can be found in *Carebourn Capital, L.P., v. DarkPulse, Inc. et al.*, 27-CV-21-1173 (Minn. Dist. Ct. Apr. 21, 2023).[3] In *Carebourn* the defendant DarkPulse was a public company (issuer) that entered into convertible promissory notes and stock purchase agreements to receive investment funds in return for the right to convert stock of DarkPulse at a highly discounted rate. Id. ¶¶7-14. When the issuer failed to permit a conversion, the parties filed claims, counterclaims and affirmative defenses against each other. Relevant to the instant analysis, the investor asserted a claim of breach of contract as well as unjust enrichment, alleging the defendant received a promissory note worth $500,000 and has not repaid the full amount. Id. at ¶35. The issuer counterclaimed and asserted affirmative defenses, including a Section 15(a) violation and recission pursuant to Section 29(b). Providing a thorough analysis of the federal law on the issue of rescission of the violative contract, the court granted summary judgment in favor of the issuer and against the investor. Id. ¶¶31-37 In creating the remedy for such violation, specifically balancing whether the investor was entitled to a return of its investment, the Court did not require any of the investment funds to be returned, as it held as to Section 29(b):

> Lastly, it would undermine the policy of Section 29(b)—protecting persons from a contract involving a prohibited transaction—by allowing an unregistered dealer to essentially enforce the contract through restitution. See Restatement (Third) of Restitution § 32(2) (Am. Law. Inst. 2011) ("Restitution will also be allowed . . . if the allowance of restitution will not defeat or frustrate the policy of the underlying prohibition."). Because of this, Carebourn is not entitled to equitable relief.

Id. at ¶36.

---

[3] Ideanomics attaches the decision hereto. Ideanomics acknowledges the case emanates from a state court and appreciates this Court's preference of federal authority. However, this recently issued case sets forth the federal authority supporting a permissible remedy pursuant to the Exchange Act.

**Law Offices of Barry M. Bordetsky**

Hon. Paul A. Engelmayer
June 12, 2023
Page 5 of 5

An additional alternative remedy the Court is empowered to issue is an order forcing all profits reaped through its securities law violations to be transferred to the Court. *S.E.C. v. Cavanagh*, 445 F.3d 105 (2d Cir. 2006) (holding a District Court has the equitable powers pursuant to Section 11 of the Judiciary Act to direct distribution of ill-begotten profits to a non-party to the suit).[4] This remedy would leave each party in the position they were in prior to the execution of the contract. *Regional Properties.* 678 F.2d at 564.

Not to be lost in the analysis are the six million preferred shares held by Plaintiff. The remedy here is simple. With the SPA deemed unenforceable and the shares not converted, an order should issue requiring them to be returned to Ideanomics so that they thereafter may be cancelled by the company and returned to the Treasury for the benefit of Ideanomics. Any outstanding warrants would likewise be cancelled.

Utilizing this Court's directive that Ideanomics has proven violation of the Exchange Act and delineating the permissible sanctions pursuant to the same, the Court should issue an order reimbursing Ideanomics for its legal fees associated with the same. *Mills*, 396 U.S. 389–90 (party that has established a violation of the securities laws should be reimbursed for the costs of establishing the violation).

Finally, in light of the Court's directive to move this case forward on an expedited basis, Ideanomics requests any order granting discovery on the Exchange Act order those requests attached to the Joint Letter (Dkt. No. 63) be deemed served and required to be responded to in accordance with the Court's Case Management Plan (Dkt. No. 68).

    Respectfully submitted,

    **Law Offices of Barry M. Bordetsky**

    By: /s/ Barry M. Bordetsky
        Barry M. Bordetsky

c: counsel (by ECF)

---

[4] We note the decision relates to an SEC disgorgement action. However, the dicta of the decision supporting the eventual holding relies upon civil cases between two private parties. Id., 445 F.3d 116-120.